**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| JULIE SU, Acting Secretary of Labor, United States Department of Labor, | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | ) Civil Action No. 6-23-cv-00418 |
| TYLER PIPE COMPANY; LESTER DEWBERRY; AND STEPHEN MCGHEE | )<br>)<br>)<br>) |
| Defendants. | ) |

**FIRST AMENDED COMPLAINT**

Plaintiff, Julie Su, Acting Secretary of Labor, United States Department of Labor, brings this action to enjoin Tyler Pipe Company, Lester Dewberry, and Stephen McGhee (collectively Defendants) from violating the provisions of Section 11(c), the anti-retaliation provision of the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651-678, hereinafter referred to as the Act, and for all other appropriate relief, including the payment of back pay and other damages found due to a former employee of Defendants by reason of Defendants' retaliatory actions in violation of the Act.

I.

Jurisdiction of this action is conferred upon the Court by Section 11(c) of the Act, 29 U.S.C. § 660(c)(2), and by 28 U.S.C. §§ 1331 and 1345.

II.

1. Defendant Tyler Pipe Company (Tyler Pipe) is now, and at all times hereinafter mentioned was, a corporation formed under the laws of the State of Texas and operating and doing business

1

at 11910 CR 492, Tyler, Texas 75706, in Smith County, within the jurisdiction of the Court. Tyler Pipe is a company that produces metal pipes and parts. Venue is proper as a substantial part of the events or omissions giving rise to the claim occurred within this district. Defendant Tyler Pipe's agent for service of process is Ivan Sturgeon, Tyler Pipe Company, 11910 CR 492, Tyler, Texas 75706.

2.      Defendant Lester Dewberry, an individual, can be served with process at Tyler Pipe Company, 11910 CR 492, Tyler, Texas 75706. He is a Safety Manager at Tyler Pipe Company. At all times hereinafter mentioned, Defendant Lester Dewberry acted directly or indirectly in the interest of Defendant Tyler Pipe Company, and was therefore conducting business in Smith County, Texas, within the jurisdiction of the Court.

3.      Defendant Stephen McGhee, an individual, can be served with process at Tyler Pipe Company, 11910 CR 492, Tyler, Texas 75706. He is a Department Supervisor at Tyler Pipe Company. At all times hereinafter mentioned, Defendant Stephen McGhee acted directly or indirectly in the interest of Tyler Pipe Company, and was therefore conducting business in Smith County, Texas, within the jurisdiction of the Court.

III.

4.      At all relevant times mentioned hereafter, Ryan Dixson-Carroll (Complainant), was employed as a cupola operator by Defendants, and was employed by an employer as defined by Sections 3(5) and 3(6) of the Act, 29 U.S.C. §§ 652(5) and (6).

IV.

5.      Complainant filed a retaliation complaint with the Occupational Safety and Health Administration (OSHA) on or about October 31, 2022, alleging that Defendants discriminated against him in violation of Section 11(c)(1) of the Act, 29 U.S.C. § 660(c)(1).

6.     OSHA thereafter investigated the above complaint in accordance with Section 11(c)(2) and determined that Defendants violated Section 11(c) of the Act. Defendants discriminated against Complainant by treating him in hostile manner and ultimately terminating him on October 31, 2022.

V.

7.     In October 2022, Tyler Pipe hired Complainant to operate a cupola at its foundry, which is a five-story furnace that melts different types of metal into liquid. Given the nature of this job, during Complainant's employment interview with Ivan Sturgeon (Human Resource Manager), Complainant asked if he could wear a respirator and Sturgeon agreed and emailed other management asking that such arrangements be made. Tyler Pipe fit tested Complainant for a respirator but did not subsequently provide him with one. During his first week, Complainant started coughing up black phlegm, his throat and tongue would burn, and he began having breathing problems due to excessive smoke and fumes from the cupola. He notified Sturgeon but nothing changed, and he was not provided a respirator. Therefore, on or about October 19, 2022, Complainant went to the Tyler Pipe dispensary room and picked up a pink P100 respirator himself and wore it consistently for the next week. On October 26, 2022, Safety Supervisor Lester Dewberry saw Complainant wearing the P100 respirator and immediately became very upset; he rudely admonished the Complainant in front of his co-workers for wearing the respirator and demanded that he take it off immediately. Complainant explained to Dewberry that he had to wear it because he did not feel safe doing his job without it.

> *Supervisors Called Mr. Dixson-Carroll to a Meeting During Which They Ridiculed Him for Stating that he Felt Unsafe Doing Aspects of His Job Without a Respirator.*

8.     The next day, October 27, 2022, Dewberry required Complainant to meet in the Safety Office with him, Steve McGhee (Department Supervisor); Jason Sieben (Plant Supervisor) and an

3

EMT Supervisor (name unknown). At the beginning of the meeting, Dewberry loudly and adamantly told Complainant he would not be allowed to wear a respirator. Due to the hostility expressed during the beginning of the meeting, Complainant discreetly started recording the meeting.  Dewberry reiterated to Complainant that he absolutely could not wear the respirator and would only be allowed to wear a 3M N-95 mask.  Dewberry spent the next thirteen minutes telling Complainant that he was safe and that he could not use the respirator to do his job. Complainant explained to the managers that at the end of each shift, he was required to clean the runners by spraying them with water while standing only a foot away from the cupola which released significant fumes and other particulate matter into the air. He then asked if he could at least wear a respirator while performing the task of cleaning the runners, explaining that "the smoke is rushing toward our faces – the mask isn't covering us from that."

9.      Instead of trying to find a workable solution, Dewberry belittled Complainant and asked him "what's your experience with hygiene testing?"  He bolstered his admonition by saying that Tyler Pipe has an entire hygienist department, and their testing is based on "tried and proven procedure." He also explained that Complainant could not use the respirator because cost was a factor. Complainant tried to further explain to the supervisors that he could "physically taste the stuff in the air while I am breathing with that mask." He also asked if an air quality test had been conducted during the cleaning of the runners, but the supervisors did not provide an answer or any reassurance. Finally, when Complainant asked if the supervisors were familiar with PAPR masks and remarked that the use of them would be beneficial for employees, Dewberry stated in a hostile tone, "sir, are you intimating that maybe [we] need to revamp our safety policies? Are you intimating that maybe [we] need to revamp what we're using out here?" When Complainant clarified that he wasn't trying to overstep, Dewberry repeatedly cut him off and stated, "what

you're doing is going way above your scope and telling us what we ought to use." Dewberry told Complainant "we are beating a dead horse," in response to Complainant's continued assertions of his safety concerns, and then asked Complainant if he thought Tyler Pipe was a good place for him. Complainant told him, "I love this job. I wake up every morning and look forward to coming here because it's fun." Complainant again implored if there was anything he could do to change the fact that they would not let him wear the respirator, and Supervisor McGhee responded, "end your employment here."

> ***McGhee Assigned Complainant the Task of Shoveling Gravel for the Rest of the Day, and then Terminated Him Because He Asked to Wear a Respirator.***

10. Immediately after the meeting, Supervisor McGhee explained Complainant that he didn't want him around the metal since he only complained about not being able to breathe. He then assigned Complainant to shovel gravel for the remaining eight hours of his shift instead of performing his regular job. When Complainant protested, McGhee responded, "what's not right is me having to go to the f---g meeting and having to deal with this b---t because you can't man up and just do your goddam job." At the end of the shift, Complainant left work for the weekend.

11. Later that same day, Mr. McGhee sent an email to HR Supervisor Sturgeon telling him that he needed a Form 99 (Safety Counseling) placed in Complainant's folder for a "safety counseling that took place on 10-25-22. I observed (him) taking an iron sample without his leggings on. I stopped him when I saw this taking place and told him the importance of having proper PPE," referring to some heat resistant clothing described as chaps. He then copied Jason Sieben on the email. Complainant was never presented with the Form 99, nor did he know anything about it until OSHA began its investigation.

12. On Monday (the next business day), Mr. Sturgeon terminated Complainant.

VI.

13.     Complainant engaged in protected activity each time he asked to wear a respirator; when he reported that he was suffering from inhaling fumes and particulates; and when he explained to Dewberry that he needed to wear a respiratory while doing his job because he did not feel safe doing his job without it. Complainant also engaged in protected activity when he explained at the October 27, 2022, meeting that he needed the respirator because at the end of each shift when he cleaned the runners, he was exposed to a significant amount of fumes and other particulates.

VII.

14.     In response to Complainant's protected activity, Defendants subjected Complainant to adverse actions. First, he was called into a meeting with four supervisors during which he was ridiculed for wanting to wear a respirator and spoken to in a hostile manner. Complainant was then assigned the arduous task of shoveling gravel for eight hours, a substantially more strenuous task than his regular duties. Finally, Complainant suffered an adverse action when he was terminated.

15.     As a result of Defendants' discriminatory actions, Complainant suffered damages, which include loss of salary, benefits and compensation, and other monetary and non-monetary losses resulting from Defendants' illegal termination.

VIII.

By the actions described in the paragraphs above, Defendants discriminated against Complainant because he exercised rights under or related to the Act, and Defendants engaged in retaliatory conduct in violation of Section 11(c)(1) of the Act, 29 U.S.C. § 660(c)(1).

WHEREFORE, Plaintiff prays for judgment:

A.     Permanently enjoining and restraining Defendants, their officers, agents, servants, employees and those persons in active concert or participation with them, from violating the provisions of Section 11(c)(1) of the Act;

B.     Ordering Defendant to make Dixson-Carroll whole by 1) reimbursing him for lost wages and other lost benefits that resulted from terminating his employment, with interest thereon from the date due until paid; 2) offering reinstatement to Dixson-Carroll, or in lieu of reinstatement, providing him with front pay in an amount to be determined at trial; and 3) expunging from all personnel and company records references to the circumstances giving rise to her unlawful adverse action;

C.     Ordering Defendants to compensate Complainant for any costs, expenses and/or other pecuniary losses incurred as a result of Defendants' discriminatory actions;

D.     Ordering Defendants to make Complainant whole by providing compensation for non-pecuniary losses he incurred, including emotional pain and suffering and damage to his professional and personal reputation;

E.     Ordering Defendants to pay additional compensation to Complainant as exemplary or punitive damages in an amount to be determined at trial;

F.     Ordering Defendants to post in a prominent place for a period of 60 consecutive days a notice stating they will not in any manner discriminate against any employee for engaging in activities protected by Section 11(c) of the Act; and

G.     Ordering such other and further relief as may be necessary or appropriate, and for the costs of this action.

Respectfully submitted,

SEEMA NANDA  
Solicitor of Labor

JOHN RAINWATER  
Regional Solicitor

MARY KATHRYN COBB  
Counsel for Civil Rights

*/s/ Dolores G. Wolfe*  
Senior Trial Attorney  
Texas Bar No. 00794323  
Phone (214)608-7922  
Wolfe.dolores@dol.gov

*/s/ Aletsey Z. Hinojosa*  
Trial Attorney  
Texas Bar No. 24132189  
Hinojosa.aletsey.z@dol.gov

U.S. Department of Labor  
Office of the Solicitor  
525 Griffin St, Suite 501  
Dallas, Texas 75202  
Phone (972)850-3129